# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

JOHN M. CALLAGY
DIRECT LINE (212) 808-7718
E-MAIL: jcallagy@kelleydrye.com

March 29, 2010

**BY HAND**

Hon. Robert E. Gerber, U.S.B.J.
United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, NY 10004

      Re:    Official Committee of Unsecured Creditors of Motors Liquidation
              Company v. JPMorgan Chase Bank, N.A., et al. Adv. Pro. No. 09-00504

Dear Judge Gerber:

      On behalf of Defendant JPMorgan Chase Bank, N.A. ("JPMCB"), I write to respectfully renew JPMCB's request to file a summary judgment motion in the above referenced adversary proceeding. At the pre-motion conference held by telephone on March 16, 2010, the Court denied without prejudice the parties' requests to file cross motions for summary judgment, and asked that we report back within two weeks regarding whether the parties believed that summary judgment motions remained appropriate. We have considered the Court's ruling and rationale with the utmost care, but given the potential for saving both the Court's time and expense to the parties, JMCB continues to believe its summary judgment motion is appropriate because no issues of material fact exist regarding the threshold legal issue of whether GM's counsel's filing of a termination statement in October 2008 with respect to an unrelated Term Loan ("Term Loan") was authorized. As a matter of law, it was not.

      JPMCB respectfully requests a courtroom conference so that its renewed application may be heard more fully.

Introduction

      The Official Committee of Unsecured Creditors of Motors Liquidation Company f/k/a General Motors Corp. (the "Committee") brought this adversary proceeding in July 2009 against JPMCB, individually and as Administrative Agent, and a syndicate of over four hundred financial institutions that provided financing to General Motors Corporation ("GM") under a $1.5 billion Term Loan. The Committee claims that the first priority security interests of these defendants were eliminated when a single UCC-3 termination statement relating to the Term Loan was filed with the Delaware Secretary of State on October 30, 2008. See Docket No 1 at ¶¶ 433-437.

Shortly after the Committee filed its Complaint, counsel for JPMCB and the Committee conferred and agreed upon a strategy to attempt to efficiently litigate this matter. Accordingly, pursuant to an agreed upon schedule, originally so ordered by this Court on October 6, 2009, 2009, and amended by Order dated January 19, 2010, the Committee and JPMCB agreed, *inter alia*: (i) that the Committee need not serve the Complaint upon defendants other than JPMCB until after disposition of summary judgment motions; (ii) that the parties would conduct limited discovery on the issue of whether JPMCB authorized filing of a termination statement relating to the Term Loan; and (iii) to a summary judgment briefing schedule. The motivation was to avoid the cost and complexity of bringing in over 400 additional defendants into this matter at this time. If JPMCB is successful as a matter of law, the entire matter is concluded.

As discussed during the March 16th pre-motion conference, the parties have exchanged documents, interrogatory responses, notices to admit and conducted six depositions of representatives from JPMCB, Simpson Thacher & Bartlett LLP ("Simpson") and Mayer Brown LLP ("Mayer Brown").

Summary Judgment Is Appropriate

Upon completion of this discovery, both the Committee and JPMCB agree that no issues of material fact exist – and no further discovery is needed. With respect to the threshold legal issue of authority, it is undisputed that:

(1) In connection with the pay-off of a $150 million outstanding loan in October 2008 to JPMCB and a syndicate of lenders relating to a real estate financing transaction, called the synthetic lease transaction, Mayer Brown – GM's counsel in that transaction – erroneously prepared and filed the UCC-3 termination statement relating to a totally distinct and unrelated $1.5 billion Term Loan. Mayor Brown did not know that it had filed a UCC-3 with respect to the unrelated Term Loan.

(2) The erroneous UCC-3 termination statement was not signed due to a 2001 revision to the Uniform Commercial Code which eliminated the need for signatures on termination statements. *Compare* UCC §§ 9-509 and 9-510 *with* UCC § 9-404 (2000).

(3) The erroneous UCC-3 termination statement at issue was referenced – by a filing number only – on several documents exchanged between the parties to the synthetic lease transaction prior to the closing of that transaction. A draft of the termination statement was also circulated by Mayer Brown to JPMCB and Simpson (counsel for JPMCB in the synthetic lease transaction). However, none of those documents, nor any others circulated in connection with the pay-off of the synthetic lease transaction – including the unrelated UCC-3 termination statement itself, referenced the Term Loan at all. All of the correspondence and documents

exchanged in connection with the pay off of the synthetic lease transaction indicated that such documents pertained only to closing of that transaction.

(4)     A written Termination Agreement dated October 30, 2008 relating to the repayment of the synthetic lease transaction, signed by both GM and JPMCB, only permitted GM to file UCC-3 termination statements with respect to the synthetic lease transaction – not the Term Loan.

(5)     At our recent telephonic pre-motion conference, the Court raised a concern that the state of mind of one of more of the participants may be at issue. The parties agree, however, that there are no issues of fact regarding the state of mind of any participants with respect to the filing of the erroneous termination statement. After securing the testimony of those participants as to their state of mind with respect to its filing, JPMCB and the Committee disagree only on the legal ramifications of the established facts. Thus, Mayer Brown deponents have given consistent, sworn, uncontroverted testimony that they did not realize they had filed a termination statement relating to the Term Loan, and certainly did not have – and did not believe they had – any authority to do so. GM has provided a sworn affidavit stating that it did not have authority to file a termination statement related to the Term Loan and did not provide its counsel, Mayer Brown, with such authority. Finally, the depositions of JPMCB and its counsel in the synthetic lease transaction make clear that they were not aware that Mayer Brown had filed an unrelated UCC-3, which was never authorized by them.

Specifically, Robert Gordon, the Mayer Brown supervising partner representing GM in the synthetic lease repayment, testified:

> Q.     During the period of time that you were working on this transaction – this synthetic lease transaction up the present, has anybody ever told you that JPMorgan authorized the filing of the unrelated termination statement?
>
> A.     No.
>
> Q.     During the period of time you worked on this matter up to today, did you ever form the belief that Mayer Brown was authorized in filing the unrelated termination statement?
>
> A.     No.

R. Gordon January 28, 2010 Deposition Tr. at pg. 66. Likewise, Ryan Green, the Mayer Brown associate who did the day-to-day work on the closing of the synthetic lease repayment, testified that:

> Q. Now, the beginning of your work on this synthetic lease transaction, the unwind. Up until the point you had your conversation with counsel in June of '09, I believe it was, did you ever believe that in the context of your work that you would be releasing any security or filing any UCC 3 that would release any security in connection with assets backstopping a term loan arrangement between General Motors on the one hand and JPMorgan on the other?
>
> A. No.

R. Green January 27, 2010 Deposition Tr. at pg. 88. Indeed, prior to June of 2009, Mr. Green had never even heard of the Term Loan. *Id.* at pp. 84 and 89. Mr. Green further testified:

> Q. Did you, Mr. Green, on behalf – in the course of your representation of General Motors in the unwinding of the synthetic lease transaction and up to the point of the closing, did you believe that Mayer Brown had been given any authority by JPMorgan or its counsel to release liens on security relating to the term loan financing arrangement between General Motors and JPMorgan?
>
> * * *
>
> A. No

*Id.* at pg. 99.

Similarly, Debra Homic Hoge, GM's current Director of the Worldwide Real Estate Group for North America, who executed the synthetic lease Termination Agreement, provided a sworn affidavit in which she affirms that:

> Old GM was not authorized by the Synthetic Lease Termination Agreement, nor did old GM believe it had any authority to terminate any UCC-1 financing statement related to the Term Loan. Nor did old GM provide Mayer Brown with any authority to file a termination statement with respect to the UCC-1 financing statement related to the Term Loan.

Debra Homic Hoge Affidavit dated March 18, 2010 at ¶ 11.

Likewise, the deponent from JPMCB's counsel testified that he gave no such authority to Mayer Brown to file a UCC-3 termination statement related to the Term Loan. M. Merjian February 4, 2010 Deposition Tr. at pg. 56.

Thus, the only persons who could conceivably have given authority, or whose testimony could be used to support the giving of authority, have all testified that they did not even know the improper UCC-3 had been filed, and certainly did not believe they had any authority to do so. In light of this explicit testimony, further examination of those witnesses at a trial would serve no purpose. Indeed, the factual record here is consistent, and does not suggest credibility issues of any kind.

(6) The filing of a termination statement relating to the Term Loan remained unknown to all parties until after the Petition Date. There can be no dispute that the participants did not learn of the filing until after June 1, 2009, the date of GM's bankruptcy filing. The Committee itself has admitted that it first learned of this issue on June 18, 2009. Nor does it contend that any member of the Committee knew about this issue prior to the Petition Date.

In sum, therefore, no material factual disputes exist impacting on the threshold legal question for the Court: whether JPMCB authorized the filing of a termination statement relating to the Term Loan in October 2008 in connection with the repayment of the synthetic lease transaction. It is clear – and no one disputes – that a UCC-3 termination statement filed without the secured party's authority is ineffective. *See, e.g.*, 6 Del. C. § 9-502 comment 3 (citing 6 Del. Ch. § 9-510). Relying on a set of inapplicable cases that pre-date the 2001 amendment to the UCC in which cases the secured party itself signed and filed the UCC-3 termination statement as was required until the amendment, the Committee claims that the filing here was authorized.[1] The undisputed facts described above however – including uncontroverted testimony from GM, Mayer Brown, JPMCB and Simpson – demonstrate that JPMCB did not provide authority to file a termination statement relating to the Term Loan. *See, e.g., In re A.F. Evans*, 2009 WL 2821510 (Bankr. N.D. Cal. 2009) (on a motion to remit certain proceeds that debtor realized from a Court approved sale of certain assets, the Court held that a UCC-3 filed without the secured party's authority is ineffective and distinguishing it from a line of cases cited by the Committee); *In re Feifer Industries, Inc.*, 155 B.R. 256 (Bankr. N.D. Ga. 1993) (on cross motions for summary judgment, the Court held that a UCC-3 filed without the secured party's authority is ineffective). In any event, because the parties agree on the material facts underlying this dispute, summary judgment is appropriate for the Court to determine, as a matter of law, whether authority was provided.

Finally, we have consulted with counsel with the Committee and understand that it too believes that summary judgment motions remain appropriate.

---

[1] See letter to the Court dated March 8, 2010 from counsel to the Committee at 2-3.

At the Court's direction, we would appreciate an opportunity to discuss these issues further with the Court.

Respectfully submitted,

John M. Callagy

cc: Eric B. Fisher, Esq. (via e-mail and First Class U.S. Mail)
Richard S. Toder, Esq. (via e-mail and First Class U.S. Mail)