**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case |
| MOTORS LIQUIDATION COMPANY, *et al.,* | : | Case No. 09-50026 (REG) |
| Debtors. | : | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, | : | Adversary Proceeding |
| | : | Case No. 09-00504 (REG) |
| Plaintiff, | : | |
| vs. | : | |
| JPMORGAN CHASE BANK, N.A., *et al.,* | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

BUTZEL LONG,
a professional corporation
Barry N. Seidel
Eric B. Fisher
Katie L. Cooperman
380 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 818-1110
Fax: (212-818-0494

*Special Counsel to the Official Committee of*
*Unsecured Creditors of Motors Liquidation*
*Company f/k/a General Motors Corporation*

000141216\0006\190096-10

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 3

    A.    The Parties Enter Into The Term Loan Agreement ............................................................ 3

    B.    The Synthetic Lease Is Paid Off And The Term Loan
           Termination Statement Is Filed .......................................................................................... 4

           1.    The Term Loan Termination Statement Is Included On A
                  Closing Checklist Sent To Simpson Thacher and JPMorgan ................................. 4

           2.    The Draft Term Loan Termination Statement Is Sent To
                  Simpson Thacher and JPMorgan .............................................................................. 5

           3.    Simpson Thacher Executes Escrow Instructions Authorizing
                  The Filing Of The Term Loan Termination Statement ............................................ 6

    C.    After The Petition Date, JPMorgan's Counsel Raises Questions About
            The Term Loan Termination Statement ............................................................................ 7

    D.    The Gordon Affidavit Is Prepared By JPMorgan's Counsel ............................................ 7

    E.    The DIP Order Is Entered And This Action Is Commenced .............................................. 8

ARGUMENT ................................................................................................................................... 9

    A.    Summary Judgment Standard ............................................................................................ 9

    B.    The Term Loan Termination Statement Rendered The Lien
           Unperfected As Of The Petition Date ................................................................................ 9

    C.    Even If Mistaken, The Term Loan Termination Statement Is Legally Effective .............. 11

    D.    The Term Loan Termination Statement Was Authorized By JPMorgan,
           As Administrative Agent For The Term Loan Agreement .............................................. 14

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Pages**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................... 9

*Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.)*,
  960 F.2d 1242 (4th Cir. 1992) ............................................................................... 10, 11, 12

*In re Hampton*,
  No. 99-60376, 2001 WL 1860362 (Bankr. M.D. Ga. Jan. 2, 2001) .................................. 11, 13

*In re Kerner Printing Co., Inc.*,
  178 B.R. 363 (Bankr. S.D.N.Y. 1995) .................................................................................. 9

*In re Ocean Power Corp.*,
  No. 02-15989 (REG) (Bankr. S.D.N.Y. Mar. 26, 2007) ........................................................ 9

*In re Pac. Trencher & Equip., Inc.*,
  27 B.R. 167 (B.A.P. 9th Cir. 1983), *aff'd*, 735 F.2d 362 (1984) ...................................... 11, 12

*In re Silvernail Mirror and Glass, Inc.*,
  142 B.R. 987 (Bankr. M.D. Fla. 1992) .............................................................................. 11, 13

*Musso v. Ostashko*,
  468 F.3d 99 (2d Cir. 2006) .................................................................................................. 10

*Rock Hill Nat'l Bank v. York Chem. Indus., Inc. (In re York Chem. Indus., Inc.)*,
  30 B.R. 583 (Bankr. D.S.C. 1983) .................................................................................. 9, 12

*Rodriguez v. City of New York*,
  72 F.3d 1051 (2d Cir. 1995) .................................................................................................. 9

*Waldorf v. Wallach (In re Waldorf)*,
  No. Civ. 90-1132E, 1991 WL 129805 (W.D.N.Y July 9, 1991) ............................................ 10


**Statutes**

11 U.S.C. § 544(a) ........................................................................................................... 10, 16

Del. Com. Code § 9-513 and § 9-510 ......................................................................................... 9

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................. 1, 9

Fed. R. Bankr. P. 7056 .......................................................................................................... 1, 9

Local Bankruptcy Rules, S.D.N.Y. 7056-1 ............................................................................ 1, 3

The Official Committee of Unsecured Creditors (the "**Committee**" or "**Plaintiff**") of Motors Liquidation Company f/k/a General Motors Corporation ("**Old GM**") respectfully submits this memorandum of law in support of its motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 7056-1 of the Local Bankruptcy Rules.

### PRELIMINARY STATEMENT

Although the dollar amount at issue in this action is substantial, the legal issues are simple. As explained in detail in this memorandum of law, a group of lenders to Old GM were paid in full after the chapter 11 petition date based on the faulty premise that those lenders had a perfected security interest in certain collateral of Old GM. Discovery has revealed that, as a matter of law and undisputed fact, those lenders did <u>not</u> have a perfected security interest due to the consequences of a legally-effective UCC termination statement filed well before the chapter 11 petition date. Accordingly, as a matter of law, the lien asserted by those lenders, and certain transfers to those lenders, are subject to avoidance.

*   *   *

On October 30, 2008, approximately seven months before Old GM and certain of its subsidiaries (collectively, the "**Debtors**") filed chapter 11 petitions on June 1, 2009 (the "**Petition Date**"), a UCC termination statement (the "**Term Loan Termination Statement**") was filed. On its face, the Term Loan Termination Statement terminated the Delaware UCC financing statement (the "**Term Loan Financing Statement**") that previously had perfected the lien (the "**Lien**") asserted by lenders under the term loan agreement with Old GM, dated as of November 29, 2006, as amended on March 4, 2009 (the "**Term Loan Agreement**"). The Term Loan Termination Statement identified JPMorgan Chase Bank, N.A. ("**JPMorgan**"),

administrative agent for the Term Loan Agreement, as "THE SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT." (capitalization appears in Term Loan Termination Statement).

The sole question presented by this motion is whether that Term Loan Termination Statement was legally effective. As a matter of law and undisputed fact, the answer to that question is "yes." It is well-settled that a UCC filing authorized by the secured party of record is legally effective, even if that filing is mistaken. Here, as noted on the face of the Term Loan Termination Statement, JPMorgan authorized the filing of the Term Loan Termination Statement.

Moreover, JPMorgan's authorization of the filing of the Term Loan Termination Statement is confirmed by all of the key facts. The filing of the Term Loan Termination Statement occurred when JPMorgan and Old GM were working together to close a different transaction involving the payoff of a synthetic lease (the "**Lease Payoff**"). In connection with work on the Lease Payoff and before the Term Loan Termination Statement was filed, JPMorgan and its counsel each received a draft of the Term Loan Termination Statement and several versions of a closing checklist, all of which explicitly indicated that the Term Loan Termination Statement would be filed. The Term Loan Termination Statement appears to have become part of the Lease Payoff closing documents by mistake. Nonetheless, JPMorgan's counsel approved these closing documents in written communications to Old GM's counsel at the time. In addition, JPMorgan's counsel executed escrow instructions that expressly authorized Old GM's counsel to file the Term Loan Termination Statement. Having authorized the filing of the Term Loan Termination Statement, JPMorgan cannot now argue that it is ineffective.

2

Because the Term Loan Termination Statement was legally effective, the Term Loan Financing Statement was cancelled. Accordingly, this Court should find that the Lien was unperfected as of the Petition Date.[1]

## FACTUAL BACKGROUND

### A. The Parties Enter Into The Term Loan Agreement

Old GM, Saturn Corporation ("**Saturn**"), and JPMorgan, as administrative agent and a lender, entered into the Term Loan Agreement on or about November 29, 2006. 7056-1 Statement ¶ 1.[2] Under the Term Loan Agreement, certain lenders (the "**Term Loan Lenders**") advanced $1.5 billion in loan proceeds to certain of the Debtors secured by the Lien on certain assets of Old GM. *Id.* ¶ 8. The Term Loan Agreement was executed by Richard W. Duker ("**Duker**") of JPMorgan. *Id.* ¶ 2. Throughout the period of time relevant to this case, Duker was the managing director at JPMorgan responsible for JPMorgan's credit relationship with Old GM. *Id.* ¶ 6.

In connection with the Term Loan Agreement, Old GM, Saturn and JPMorgan also entered into a collateral agreement dated as of November 29, 2006 (the "**Collateral Agreement**"), which provided that, as between JPMorgan and Old GM, JPMorgan "shall be conclusively presumed to be acting . . . with full and valid authority so to act" and Old GM shall not "be under any obligation, or entitlement, to make any inquiry respecting such authority."

---

[1] The Committee and defendant JPMorgan have agreed to limit the scope of their respective motions to the question of the effectiveness of the Term Loan Termination Statement. This approach is efficient because, if the Committee prevails on this motion, the only remaining issues for discovery concern the amounts recoverable by the Committee.

[2] 7056-1 Statement refers to the Statement of Undisputed Material Facts Pursuant to Local Bankruptcy Rule 7056-1 submitted by Plaintiff in connection with this motion for partial summary judgment.

3

The Collateral Agreement also was signed by Duker, as managing director of JPMorgan. *Id.* ¶¶ 3-5.

On November 30, 2006, the Term Loan Financing Statement (UCC-1 financing statement, filing # 64168084) was filed with the Delaware Secretary of State in connection with the collateral securing the Term Loan Agreement. *Id.* ¶ 9.

**B.     The Synthetic Lease Is Paid Off And The Term Loan Termination Statement Is Filed**

In October 2008, Duker, on behalf of JPMorgan, was involved in the Lease Payoff, a transaction unrelated to the Term Loan Agreement which concerned Old GM's payoff of a synthetic lease (the "**Lease Payoff**"). *Id.* ¶ 10. The documents for the synthetic lease transaction included a participation agreement, dated as of October 31, 2001 (the "**Participation Agreement**"), and amendment thereto. *Id.* ¶ 11. Both the Participation Agreement between, among other parties, JPMorgan and Old GM, and the amendment were signed by Duker on behalf of JPMorgan. *Id.* ¶ 12.

In connection with the synthetic lease transaction and the Lease Payoff, JPMorgan was represented by Mardi Merjian ("**Merjian**") of Simpson Thacher & Bartlett LLP ("**Simpson Thacher**"). *Id.* ¶ 14. Old GM, as lessee, was represented by a team at Mayer Brown LLP ("**Mayer Brown**"), supervised by Robert E. Gordon ("**Gordon**"), a real estate partner. *Id.* ¶¶ 19, 20, 25. As explained below, it was in connection with work on the Lease Payoff that Old GM filed the Term Loan Termination Statement with JPMorgan's knowledge and authorization.

**1.     The Term Loan Termination Statement Is Included On A Closing Checklist Sent To Simpson Thacher and JPMorgan**

On October 1, 2008, Gordon of Mayer Brown asked Ryan Green ("**Green**"), an associate working under his direction, to put together a checklist for the Lease Payoff. *Id.* ¶¶ 22, 24.

4

Green, together with a Mayer Brown paralegal, prepared a closing checklist that was reviewed by Gordon. *Id.* ¶¶ 25-26. The closing checklist contained a heading "General Documentation" below which was a subheading: "Termination of UCCs." Under the subheading "Termination of UCCs," the closing checklist listed three financing statements, the third of which was the Term Loan Financing Statement, identified as "Financing Statement as to equipment, fixtures and related collateral located at certain U.S. manufacturing facilities recorded on 11.30.06 as File Number 64168084." *Id.* ¶¶ 27, 29. Thus, the closing checklist expressly identified for termination the financing statement that pertained to the Term Loan Agreement.

On October 15, 2008, Green sent Arun Sundaram, his client contact at Old GM, a draft of the checklist, which listed the Term Loan Financing Statement as a UCC for which a termination statement would be prepared. *Id.* ¶ 30. On October 15, 2008, Duker of JPMorgan received the draft checklist from Sundaram, listing the Term Loan Financing Statement as a UCC for which a termination statement would be prepared. *Id.* ¶ 31.

On that same date, Merjian also received a draft of the checklist from Green, listing the Term Loan Financing Statement as a UCC for which a termination statement would be prepared. Green sent the checklist to Merjian to be certain that Old GM and JPMorgan "were on the same page about what needed to be done for closing" the Lease Payoff. *Id.* ¶ 32.

Later that same day, Duker again received a draft of the checklist, this time from Merjian. As with all prior drafts of the checklist, it listed the Term Loan Financing Statement as a UCC for which a termination statement would be prepared. *Id.* ¶ 33.

    **2.**    **The Draft Term Loan Termination Statement Is Sent To Simpson Thacher and JPMorgan**

On October 15, 2008, Merjian and Gordon also received "drafts of the closing documents" from Green, including a draft of the Term Loan Termination Statement. *Id.* ¶ 34.

5

The first line of the draft Term Loan Termination Statement, like the final, filed version, reads: "INITIAL FINANCING STATEMENT FILE # 64168084 on 11.30.06." Thus, on the face of it, the draft Term Loan Termination Statement identified for termination the financing statement that pertained to the Term Loan Agreement. The second line of the draft, like the final, filed version, has a box checked next to "TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement." The sixth line requests "CURRENT RECORD INFORMATION" and lists "GENERAL MOTORS CORPORATION." The ninth line requests the "NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT" and lists "JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT." *Id.* ¶¶ 35, 46. On that same date, Duker received "drafts of the closing documents" from Merjian, identical to those received by Merjian from Green. The closing documents transmitted to Duker included a draft of the Term Loan Termination Statement. *Id.* ¶ 36.

A couple of days later, on October 17, 2008, Merjian replied to Green's email transmitting the draft Term Loan Termination Statement and other closing documents. Merjian wrote, "Ryan Nice job on the documents." Gordon was copied on this email. *Id.* ¶ 37.

### 3. Simpson Thacher Executes Escrow Instructions Authorizing The Filing Of The Term Loan Termination Statement

On October 24, 2008, Merjian received draft escrow instructions from Green that were drafted for signature by counsel for Old GM, counsel for the trustee, counsel for the administrative agent and the title company. *Id.* ¶ 38. The first page of the draft escrow instructions states, "Termination of UCC Financing Statements (File Numbers . . . and 64168084)." *Id.* ¶ 39. Thus, the escrow instructions expressly identified for termination the financing statement that pertained to the Term Loan Agreement. Green asked Merjian if he had

6

any comments to the draft escrow letter. Merjian replied that "it was fine." *Id.* ¶ 40. The escrow instructions were in fact signed by, among others, Green, as attorney for Old GM, and Merjian, as attorney for JPMorgan. *Id.* ¶ 41. Before signing, Merjian reviewed the escrow instructions and understood that the termination statements listed were documents that would be released to Mayer Brown upon the closing of the Lease Payoff. *Id.* ¶ 43.

On October 30, 2008, the Lease Payoff closed, and Green told a paralegal at Mayer Brown to file the Term Loan Termination Statement. *Id.* ¶ 45. Later that day, consistent with the escrow instructions, the Term Loan Termination Statement was filed without any changes to the draft previously circulated among Duker, Merjian and Gordon. *Id.* ¶ 46.

**C.      After The Petition Date, JPMorgan's Counsel Raises Questions About The Term Loan Termination Statement**

In June 2009, after the Petition Date, Morgan, Lewis & Bockius LLP ("**Morgan Lewis**"), then counsel to JPMorgan, called Gordon to ask why Mayer Brown had filed the Term Loan Termination Statement. *Id.* ¶ 57. In response to this query, Gordon called Green, indicating that there was concern about the Term Loan Termination Statement and asking Green to look into the matter further. *Id.* ¶ 58. Thereafter, Green met with Gordon to "let him know that the UCC causing the concern was referenced on the checklist and in the escrow instructions." *Id.* ¶ 59. Green showed Gordon the escrow instructions and the checklist so that Gordon could see that the Term Loan Termination Statement "was within the universe of documents involved in the" Lease Payoff. *Id.* ¶ 60.

**D.      The Gordon Affidavit Is Prepared By JPMorgan's Counsel**

In response to the concerns raised by Morgan Lewis on behalf of JPMorgan, Mayer Brown, as former counsel to Old GM, proposed to have Gordon execute an affidavit "in order to assist JPMorgan Chase." *Id.* ¶ 61. Morgan Lewis, as counsel to JPMorgan, prepared the initial

7

draft of the affidavit, which it then sent to Mayer Brown for review, explaining that JPMorgan was "very eager to be in a position for [the affidavit] to be executed . . ." *Id.* ¶ 62.

On June 18, 2009, Gordon signed the final affidavit, swearing that the filing of the Term Loan Termination statement was "[u]nbeknownst" to him. Gordon now acknowledges, however, that, in October 2008, he received a draft of the Term Loan Termination Statement and the checklist, listing the Term Loan Financing Statement as a UCC for which a termination statement would be prepared. *Id.* ¶ 66. On June 19, 2009, Morgan Lewis transmitted the final affidavit to counsel for the Committee, Debtors and United States Treasury, and asserted that the affidavit "makes clear" that the filing of the Term Loan Termination Statement was unauthorized. *Id.* ¶ 67.

**E.     The DIP Order Is Entered And This Action Is Commenced**

On June 25, 2009, this Court entered the *Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties* (the "**DIP Order**"). The DIP Order approved repayment to the Term Loan Lenders subject to the Committee's right to investigate and challenge perfection of the Lien. *Id.* ¶ 68. Paragraph 19(d) of the DIP Order authorized the Committee to bring actions based upon the perfection of the Lien by July 31, 2009. *Id.* ¶ 69. On July 31, 2009, the Committee commenced this action. *Id.* ¶ 72.

8

# ARGUMENT

## A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. The moving party bears the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law. *See In re Ocean Power Corp.*, No. 02-15989 (REG), 2007 WL 949598, at *3 (Bankr. S.D.N.Y. Mar. 26, 2007); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). If the movant meets its initial burden, then the non-moving party has the burden of showing that there are triable issues of fact, without relying on pleadings containing mere allegations or denials. *See In re Ocean Power*, 2007 WL 949598 at *3; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Applying this standard, Plaintiff is entitled to an order granting the Committee partial summary judgment, and ruling, among other things, that the Lien was unperfected as of the Petition Date.

## B. The Term Loan Termination Statement Rendered The Lien Unperfected As Of The Petition Date

Under the Uniform Commercial Code, the filing of a termination statement renders ineffective the financing statement to which the termination relates and causes the subject lien to become unperfected. *See* Del. Com. Code § 9-513 and § 9-510; *see also In re Kerner Printing Co., Inc.*, 178 B.R. 363, 369-70 (Bankr. S.D.N.Y. 1995) (bank's lien became unperfected upon filing of termination statement); *Rock Hill Nat'l Bank v. York Chem. Indus., Inc. (In re York Chem. Indus., Inc.)*, 30 B.R. 583, 585 (Bankr. D.S.C. 1983) (termination of financing statement

9

rendered security interest unperfected). The filing of a termination statement "releases the secured creditor's lien against the debtor's property." *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.),* 960 F.2d 1242, 1245 (4th Cir. 1992).

If a security interest is unperfected prepetition, it will be trumped by the statutory lien of the trustee (or debtor-in-possession) upon the filing of the bankruptcy petition. *See, e.g., id.* at 1251. Upon the filing of a bankruptcy petition, section 544(a) of the Bankruptcy Code gives the bankruptcy trustee the status of a hypothetical judgment lien creditor and provides her with a perfected judgment lien against the debtor on the date of the bankruptcy:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . .

11 U.S.C. § 544(a); *see generally Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006); *Waldorf v. Wallach (In re Waldorf)*, No. Civ. 90-1132E, 1991 WL 129805 (W.D.N.Y July 9, 1991).

Here, the Term Loan Termination Statement, filed on October 30, 2008, clearly stated that the Term Loan Financing Statement was terminated with respect to the security interest of JPMorgan, the secured party of record authorizing its filing. Accordingly, on October 30, 2008, the Lien became unperfected, and, as of the Petition Date, the Lien remained unperfected. Therefore, on the Petition Date, when the debtors in possession acquired the rights and powers of a lien creditor as set forth in section 544(a) of the Bankruptcy Code, the Debtors necessarily

10

acquired a perfected security interest in the collateral securing the Term Loan Agreement and the power to avoid any interest asserted by the Term Loan Lenders.[3]

C. **Even If Mistaken, The Term Loan Termination Statement Is Legally Effective**

In opposition to this motion, Plaintiff expects JPMorgan to contend that the Term Loan Termination Statement was not legally effective because it was filed by mistake. This contention, even if true, makes no legal difference. Lenders are bound by the effects of UCC termination statements, even when such termination statements are filed in error, because the entire purpose of the UCC system is to provide public notice of secured interests without requiring parties to look behind or beyond the four corners of the public filing. *See generally In re Silvernail Mirror and Glass, Inc.*, 142 B.R. 987, 989 (Bankr. M.D. Fla. 1992) ("The Termination Statement gave all indications to the world that [the creditor] was terminating its security interest in all its collateral. The filing of a Termination Statement is a method of making the record reflect the true state of affairs so that fewer inquiries will have to be made by persons who consult the public records"); *In re Kitchin Equip. Co.*, 960 F.2d at 1245-46 (holding that a bankruptcy trustee could avoid a lien under section 544(a) of the Bankruptcy Code because the effect of a termination statement "on a secured interest is dramatic and final," even though the box marked "termination" was checked in error); *In re Pac. Trencher & Equip., Inc.*, 27 B.R. 167, 168 (B.A.P. 9th Cir. 1983), *aff'd*, 735 F.2d 362 (1984) (holding that "pursuant to clearly

---

[3] The burden of persuasion shifts to the creditor once its entitlement to secured status has been placed in issue. *See In re Hampton*, No. 99-60376, 2001 WL 1860362 at *2 (Bankr. M.D. Ga. Jan. 2, 2001) (noting that the trustee's objection clearly raised the issue of "entitlement as a secured creditor" thus shifting the burden of persuasion). Having shown that the Term Loan Termination Statement unequivocally terminated the Lien, the burden rests with JPMorgan to prove its invalidity. Nevertheless, JPMorgan cannot meet that burden because, as noted below, the evidence overwhelmingly establishes that JPMorgan authorized the filing of the Term Loan Termination Statement.

articulated authority," the creditor's "prior U.C.C. filings lost even marginal sufficiency upon the filing of a termination statement, albeit erroneous, and that in turn effected a lapse in perfection"); *In re York Chem.*, 30 B.R. at 586 (creditor's "lien was unperfected as to the debtor in possession" because creditor had terminated its "financing statement – albeit unintentionally and inadvertently").

The sole issue considered by the Fourth Circuit in *Kitchin* was whether a creditor retained a perfected security interest after erroneously filing a termination statement. *In re Kitchin Equip. Co.*, 960 F.2d at 1244. The secured creditor mistakenly "checked the box marked TERMINATION" and inserted "the file number of the original financing statement" thus "indicating in accordance with the language of the form that this was a termination statement." *Id*. at 1246. The court concluded that a "check in the TERMINATION box . . . in conjunction with the printed language on the form discloses that the filing is a termination statement." *Id*. The Fourth Circuit reversed the district court and the bankruptcy court, holding that, even though the box was checked in error, the secured creditor was bound by the error and the termination statement was effective. *Id*.

Similarly, in *York*, one of the creditor's employees, "apparently through inadvertence," requested the termination of an active financing statement. *In re York Chem. Indus., Inc.*, 30 B.R. at 585. None of the parties intended that the financing statement be terminated. *Id*. Nevertheless, the court held that the creditor was responsible for having unintentionally and inadvertently terminated its financing statement. *Id*. at 586.

The effect of a mistakenly filed termination statement was also addressed in *In re Pac. Trencher & Equip.* That case involved a creditor who, intending to file a partial release, erroneously filed a termination statement. 27 B.R. at 168. The Bankruptcy Appellate Panel of

12

the Ninth Circuit affirmed the trial court's grant of summary judgment in favor of the trustee in bankruptcy, which held that the creditor filing the mistaken termination statement had no perfected security interest under California's version of the UCC. *Id*. As the court categorically explained, the filing of the erroneous termination statement "resulted in the expunction of [the creditor's financing] statement . . . and the [creditor's] perfection must be regarded as having lapsed." *Id*. at 169.

In accordance with the above cases, the court in *Silvernail* also ruled that a creditor's security interest became unperfected upon the filing of a mistaken termination statement. *In re Silvernail,* 142 B.R. at 989. The court held that the language of the termination statement "unambiguously terminated" the creditor's security interest and was not subject to any other interpretation. *Id*. at 989-90.

In *Hampton*, the court sustained a trustee-in-bankruptcy's objection and enforced a termination statement filed by mistake. *In re Hampton*, 2001 WL at 1860362 *3. The court found that, as of the petition date, "no valid financing statement existed," and therefore the creditor's security interest was unperfected. *Id*. at *1. The court noted that "anyone who conducted a search of the public records . . . would have concluded that no security interest existed." *Id.* at *2. Despite having signed the termination statement, the creditor asserted that the termination "was done in error and executed without [its] authority." *Id*. at *1. Nonetheless, the court found that "sufficient authority existed to execute the termination statement," and therefore the termination statement was effective. *Id*. at *3.

In this case, the Term Loan Termination Statement stated unambiguously that the Term Loan Financing Statement was terminated with respect to the security interest of JPMorgan, the secured party of record authorizing its filing. The Term Loan Termination Statement was

13

reviewed and approved by JPMorgan and its counsel. As the foregoing cases make clear, as a matter of law, even if mistaken, the Term Loan Termination Statement was legally effective. Upon its filing, the Lien became unperfected.

**D.     The Term Loan Termination Statement Was Authorized By JPMorgan, As Administrative Agent For The Term Loan Agreement**

Plaintiff also anticipates that JPMorgan will contend that the Term Loan Termination Statement was not legally effective because, notwithstanding the language that appears on the face of the Term Loan Termination Statement, its filing was not "authorized" by JPMorgan. This argument is easily refuted because the undisputed facts establish that JPMorgan authorized the filing of the Term Loan Termination Statement.

As set forth above and in the 7056-1 Statement, the Term Loan Termination Statement was filed in connection with the Lease Payoff, involving Old GM, as lessee, and JPMorgan, as administrative agent. Before the closing of the Lease Payoff on October 30, 2008:

- Simpson Thacher, counsel for JPMorgan, received and approved several versions of the closing checklist, all of which identified the Term Loan Termination Statement as a document to be filed in connection with the Lease Payoff. 7056-1 Statement ¶¶ 32, 34, 37.

- Simpson Thacher transmitted the closing checklist and the draft Term Loan Termination Statement to Richard Duker, the managing director at JPMorgan with responsibility for JPMorgan's credit relationship with Old GM, including the Term Loan Agreement and the Lease Payoff. *Id.* ¶¶ 6, 33, 36.

- The draft of the Term Loan Termination Statement indicated that the effectiveness of the Term Loan Financing Statement is terminated and identified JPMorgan as the secured party of record authorizing the termination. *Id.* ¶ 35.

14

- Old GM transmitted the closing checklist directly to Duker of JPMorgan. *Id.* ¶ 31.

- Simpson Thacher received and approved a draft of the Term Loan Termination Statement to be filed in connection with the Lease Payoff. *Id.* ¶¶ 34, 37.

- Simpson Thacher executed escrow instructions, identifying the Term Loan Termination Statement as a document to be filed upon the Lease Payoff. *Id.* ¶¶ 39, 41.

After the Lease Payoff closed, Mayer Brown, as counsel to Old GM, caused the Term Loan Termination Statement to be filed with the Delaware Secretary of State without any changes to the draft circulated, with the knowledge of JPMorgan and in accordance with executed escrow instructions. *Id.* ¶¶ 33, 36, 46.

Thus, based on these undisputed facts, there is no doubt that JPMorgan authorized the filing of the Term Loan Termination Statement. As a consequence, it was a legally effective UCC filing.

15

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests entry of an order: (i) granting this motion for partial summary judgment; (ii) ruling that the Lien was unperfected as of the Petition Date and, thus, avoidable under 11 U.S.C. § 544(a); and (iii) providing such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 1, 2010

                                  BUTZEL LONG,
                                  a professional corporation

By:   /s/ Eric B. Fisher
       Barry N. Seidel
       Eric B. Fisher
       Katie L. Cooperman
       380 Madison Avenue, 22nd Floor
       New York, New York 10017
       Tel: (212) 818-1110
       Fax: (212-818-0494

*Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company f/k/a General Motors Corporation*

16